May it please the Court, I'm Richard Boyle here for the Plaintiffs' Appellates in this case. The appeal here to this Court involves the appeal of an order of the trial court which dismissed with prejudice plaintiffs' claims for contribution arising out of an unusual type of situation. And this is a very interesting decision for the Court to make, I think, as to the Illinois Contribution Act. And basically the questions that are going to be before the Court concerning the Act is, number one, whether the Act, the Contribution Act, requires that there be a cause of action, a direct cause of action by the injured party for whom, which is the basis for the claim of contribution, against the contribution defendant. Now, we contend that there is not, that that is not a requirement when you analyze the Act. If it is a requirement that you analyze the Act, another portion of our briefs and appeal is that there is a wrongful death action on behalf of the estate of an unborn child against the mother, even in spite of the stolen decision. And my colleague Kathleen Jones will address that when I'm, and I hope I leave her enough time so she can sufficiently discuss that with you. So anyway, those, it seems to me, to be the two issues that we're going to have as far as my portion of it is concerned is to convince the Court that it isn't necessarily so that you have to have a, that the contribution defendant has to be liable in tort for a cause of action to the injured party. In this case, and I think if I could briefly talk about how this came about, there was an automobile railroad crossing collision in March of 2009 in Hartford, Illinois, at the end of 7th Street. Mrs. Balvin, who is the estate of Heather Balvin, was driving a Ford pickup truck in her course of an appointment. She was a geophysical engineer and was going to a, across a private crossing to a facility to do work for Terracon Consulting, Inc., which was her employer. In the process of driving over this private crossing on her way to work, she drove in front of a passenger train. She, the collision occurred, she was killed, and also her three-month fetus was killed. The course claims were made against the railroad entities at the crossing and against the entities that owned and operated the private crossing, and those claims were settled jointly by the railroad entities and the private crossing entities, and settled both the claim of the deceased mother and the claim of the estate of the fetus, which of course has a wrongful death claim, against the third party. So, and what reserved in that settlement agreement was the reservation that the railroad, that the plaintiffs here could proceed on with the contribution claim with respect to the, to the damages it paid for the, for the death claim of the fetus. So that's what we have. And it wouldn't be, the interesting thing about this, and the reason we have this problem, is because rightfully so, in the Illinois Supreme Court installment, we rule that a mother is not liable for any negligence to her fetus, and there's good policy reasons for that. And there's both policy reasons and constitutional reasons, and that's all explained in a, in a well-written opinion in the Stalman, by the Stalman court. But we take the position that, and so that creates this very unusual situation where there's definite policy reasons why there should be contribution. There should be contribution because it encourages settlement, and also because it, it, each party should pay its, its fair share of the common liability or the culpability. So it's for that reason that this is a unique situation, and this court is faced, I think, with how to handle that, or, or where, where fairness lies. And fairness, it would seem to me, would lie, rather than in a, a very hyper-technical interpretation of the Contribution Act, which would deprive contribution, which would, only because of the Stalman situation. So it would seem to me that the court should adopt a, the view of the Illinois Contribution Act so that it, it will provide the, the, the, provide for the reasons that the act was involved in the first place, to promote settlement and to make sure that each party pay its fair share. And I see your, your, your co-counsel is going to argue the point about whether or not there is a wrongful death claim. That's true. But are you saying that we should allow contribution even if the mother is not liable in tort? Absolutely. And, and I'll, I'll. As a matter of policy, is basically what you're saying. And, and, and I'll, I'll, I will tell you why.  Well, yes, but let's look at the, the act. Let me read to you what the act actually says. It says where two or more persons are subject to liability arising out of the same injury to persons or property, then it's, there, the right of contribution exists. It doesn't say that two persons subject to liability in court caused the same injury. It's just arising out of the same injury. Well, if, if they didn't cause it, they wouldn't be subject to liability in tort, right? I mean, something you have to prove is proximate cause. Well, I think that the court could be, I mean, it's, it's a question that you could, you could take that the fairness, the fair way to, to look at it would be that it would allow that situation. In other words, subject to liability in court arising out of the, the same injury. Okay. Heather Baldwin, the driver of the truck, is subject to liability in tort because this accident happened. Whether or not she's subject to liability in tort by her fetus, or whether she's subject to liability in tort by us, who has a contribution claim against her, because what her action did injured us. And we have, we are the subject of, we are the liability in tort to which she is subject to. Not only that, there's cases, and New York has adopted this very thing, as we have put in our brief, and we would urge that this court take a look at those New York opinions and what the New York court did. By the way, New York statute, statute is a lot stricter than ours in that regard, because it just says who are subject to liability for damages to the same, same person. But the New York court, even in face of that, said the fair thing to do for contribution was to interpret this so that it also, the liability in tort didn't necessarily have to be the, the liability to the injured party. So that's one reason why the, the court, this court could adopt the view of the Contribution Act so that fairness could be accomplished here. The other is, under the, there's a case of, of Brockman, people versus Brockman, that analyzed what it means by subject to liability in tort. And they reached the conclusion that really what it means is relative culpability, that the relative, people that are relatively culpable should be subject to liability in tort. In other words, it doesn't have to be a very technical thing. So there's, and I grant you that there's other language in the Brockman opinion and other opinions that go very specifically and say, well, it has to be to, to the injured party and the injured party has to have the, the cause of action. But the reason that this issue has never been presented to those courts, and I mean, this is an issue of first impression, and no court has ever been presented with the issue of, well, you've got a situation where, where because of a mother fetus relationship, there's no liability on the part of the mother to the fetus. But you have that very unique situation that, are you going to say that that trumps the policy reasons behind the Illinois Contribution Act? And I would say that you were not, that you should not, because there's every reason that fairness would require under this circumstance that there be contribution. The other issue that we have is when we filed this, when we filed this contribution claim, filed it on behalf of, filed in two, in two counts, one against Terracon, the employer. And obviously Terracon would be liable, vicariously liable for all the acts of the driver driving across the crossing, failing to look, and all the other issues that are raised in a crossing accident. We also made a claim against Terracon in the, in the, in the pleading that they failed, that Terracon failed to properly instruct their employees with respect to transversing, in this case, the private crossing on their way to work, and failed to properly give her instructions as to, as to what to do. There was never a motion filed directed against that allegation in the complaint, and the only motion that was filed was a motion by the estate of Balvin, filing a motion to dismiss on the basis that, that there was no liability in court for, against the, Heather Balvin, or Heather Balvin deceased. But for, so for the first time in, in the brief, in the appellate court, Terracon raises the issue that this court should, that there was a defect in that complaint because it was not specific enough and it didn't state a cause of action. Well, the brief, I think our briefs act, act, cover this fairly well and, and specifically in the reply brief, but obviously under the Code of Civil Procedure, there's a pleading there that if a motion attacking a pleading is not raised in the trial court, it can't be considered for the first time on appeal. Also, there's a statute in the Code of Civil Procedure that no pleading in and of itself is bad, and if it is bad, then the trial court could be presented with the issue and it may or may not be able to be corrected. The only time that this, that on appeal that a, an appellate court can for the first time determine or consider the question whether there's a, whether a complaint states a cause of action when that issue has never been raised before is, is if the complaint wholly and absolutely fails to state a cause of action. In other words, it has to be, it has to be as a matter of law, it just can't state a cause of action, and that's not what we have here. The allegation in the complaint is to properly train and instruct its employees, including Heather Bauman, concerning safety procedures and practices while crossing railroad tracks and while performing their duties. Now certainly under, under any stretch of the imagination, that gives the defendant, or the, the, you know, the defendant in this case, an opportunity to know what the charge is against them, and if they have some question about that, they can file a motion to make more definite, certain, or whatever. But anyway, so that's what, another issue that this court is presented with. If that allegation were approved, failure to train. Yes. Would it entitle you to recover any more damages from Terracon than from the mother's estate? No. And so doesn't it fall under the same reasoning as the negligent entrustment case that's cited in one of the appellee's briefs? The thing is, this is not a negligent entrustment case. They cite the negligent entrustment cases which requires that there be knowledge of the employer or whoever is doing the entrusting of, of, of some improper prior conduct on the part of the person to whom it's trusted. That's not what we have here. So negligent entrustment doesn't have anything to do with it. Well, I, I understand that the, the negligent entrustment case, the analysis was that since you couldn't recover any more anyway. Yeah, that's the reason because you're limited to what, you're limited to what the recovery is for the, for the entrustee or entrustor or whatever it is. But you're limited to that because of the nature of the negligent entrustment action. But that's not what we have here. The only thing we have here is just a direct charge of negligence against Sterikon independent of vicarious liability. So is there any other questions that I have? If not, I'll turn this over to. I don't believe there are. My colleague. There's a lot of things that could be said, but I think they're all said in the briefs in the event that, you know, obviously we don't waive anything by not going. By not wasting your time at all. Thank you very much. You haven't waived anything. Thank you. Counsel. Good morning. May I please report? I'm Katie Jones. I'm co-counsel for the appellants. Obviously, as my colleagues alluded to, this case involves an interpretation of Illinois' wrongful death statute. And as this court is, I'm sure, very well aware, the wrongful death act was enacted to create a cause of action where simply none existed at common law. And that is a statutory cause of action. And as the court in Illinois Supreme Court recently articulated in Williams v. Baby Doe, the place we go to interpret the Illinois wrongful death act is the statutory language of the Illinois wrongful death act itself. It is actually incorrect to go to the common law, to common law negligence principles, to look for a valid interpretation of a statutory wrongful death act. And therefore, when we go to the Illinois wrongful death act, it becomes very apparent that the Illinois legislature intended to create an independent cause of action for an unborn child. And right there, it puts that situation already out of the realm of the Stallman case, which the district or the trial court relied upon in granting its motion to dismiss. Stallman is premised on the assumption that the mother and the child are not wholly separate legal entities and that they're joined in some way. And in this context of Stallman, that makes sense. In the context of the wrongful death act, the legislature has already said that that's not a valid assumption, that we have wholly and distinct legal entities. So you're saying that there is, and in this case would have been, a cause of action for wrongful death of the fetus against the mother? I am exactly saying that. And if we agree with that analysis, wouldn't we be creating an anomaly, though, under the law where a child injured as a fetus but born alive would have no cause of action, but a fetus that died would? I would submit that the Illinois legislature has already done that, Your Honor. And the common law is separate from what the Illinois legislature has already said. And I would also submit that this situation would only arise in a very narrow category of cases because you still do have parental immunity doctrine. And the parental immunity doctrine as articulated by Cates, which was also relied upon by the trial court, has been applied to wrongful death actions. So then we would have wrongful death cases against mothers on behalf of a fetus for allegedly killing the fetus by taking drugs, smoking. No. Why not? You absolutely would not because Cates says that there's parental immunity in those situations if it involves decisions in supervising or caring for the child. So all of those concerns with Solemn Court that we don't want to legislate or have courts looking at those really intimate decisions of a mother, what I'm going to eat, how I'm going to exercise, what vitamins I'm taking, what drugs I'm taking, Cates already says, no, we're not going there. We're not going to legislate that. We're not going to have negligence for that. There's parental child immunity. And the parental child immunity doctrine has been applied in the wrongful death context. Okay, I'm a little confused here. Sure. Because the statute that the legislature passed doesn't exempt any of that. But the parental child immunity doctrine does. So on one hand, you're saying the Supreme Court's ruling is separate from the statute and the legislature has a right to create a cause of action. They did create a cause of action, and they didn't exempt any of these other things. Right, but they created the cause of action, but then there's also an immunity doctrine that has been created separately that has been applied to the wrongful death statute. So I think the confusion is that the cause of action is created in the first instance, but then also we do have separate categories of immunity. And then it carves out these areas where you really do a wrong to the general public. A mother should have an obligation to the general public and to her unborn child to operate her motor vehicle in a way that is not harmful to others on the road and to her child. And I will submit to the court that if I am driving to the hospital in labor and I get into a car accident and my child dies, then under Belie's reasoning, there would be no cause of action. But if I'm coming home from the hospital, there's no doubt under Illinois law that there would be a cause of action in that situation under case. And I would say that that would be a highly inequitable result, especially in the facts of this case when you're dealing with a contribution claim. Are there any further questions from the court? I don't think so. Thank you, Your Honor. Thank you. Counsel? Please be seated. Thank you, Your Honor. Please report, counsel. My name is Susan Harreld. I'm here on behalf of the estate of Heather Balvin. I will be arguing the issue as to the estate and Roger Wilson will be arguing as to the issues with regards to tariff on her employer. We're here today on a very narrow legal issue. Appellants contend that this has to do with fairness. And I would submit that if this case is about fairness, one might question whether it is fair for the railroad entities and the crossing owner to seek recovery from the estate of the young woman who died as a result of their negligence. But this case is not about fairness. It's about the doctrine of stare decisis. Over 25 years ago, the Supreme Court of Illinois in the Stallman v. Youngquist case determined the state of Illinois would not recognize a cause of action for maternal prenatal negligence. In doing so, the court took into consideration the unique relationship between a mother and her unborn child. And the court reasoned it didn't want to set up a scenario where the mother and her unborn child are essentially legal adversaries from the moment of conception until the time of birth. That the Stallman case did not involve a contribution claim doesn't alter its application here. The Illinois Joint Tort Fees or Contribution Act specifically is worded such that it requires two or more persons to be subject to liability in tort arising out of the same injury. And I touched on this during counsel's argument. The Supreme Court has interpreted that language in the Peoples v. Brockman case and also in the Roe v. Jay and Forklift case. To require that the liability in tort for the same injury refer to the injury incurred by the plaintiff. Not to any injury suffered by the parties in the contribution. In fact, in the Roe case, the court said some basis for liability to the original plaintiff must exist if defendant is not a tort feeser vis-a-vis the original plaintiff. It cannot be a joint tort feeser vis-a-vis a co-defendant and may not be held liable to that co-defendant for contribution. To interpret the law in a way that appellants are contending would essentially require the court to read it as where persons are subject to a claim for contribution. There is a right of contribution amongst them. Clearly, that's not how it is worded. And that is not how the Supreme Court of the state has interpreted it. In Stallman, the Supreme Court had the opportunity to address this as a parental immunity issue. In fact, the two appellate court decisions that preceded it both ruled on the parental immunity issue. But the court there noted that neither of those cases adequately addressed the preliminary issue of whether a cause of action, by or on the power of the fetus subsequently born alive, could be asserted against its mother for the unintentional infliction of prenatal injuries. And the court held such a cause of action shall not be recognized. The Culotta case, which we cite in our brief, deals with this distinction between parental immunity and the lack of a cause of action. And that is the distinction we are looking at here. Now, the appellants have seized on the subsequently born alive language to contend that because this case involves a claim of a child who died in utero, Stallman doesn't apply. The problem with that is it's hinging the existence of the duty on the nature of the injury. It's exactly backwards. The duty has to exist first in order for there to be a cause of action or a basis for recovery for any injuries that come subsequent to that. A driver's duty to others is and should be the same regardless of what injuries may result from an accident involving that driver. The public policy considerations behind Stallman didn't turn on the nature of the injury. If you want to take a step back from it and look at it in another context, under Stallman, a claim could still be brought on behalf of an unborn child who died in utero as a result of a car accident against its father. Because this isn't about the parental immunity or the relationship between parents and their children. It's not the same public policy considerations. This isn't about the preservation of family harmony or avoiding fraud or collusion. This is about the mother and it's about respecting her right, her right to privacy, her bodily autonomy. And that's why the Stallman court carved out this exception. It is because of the very unique relationship between her and her unborn child that the court is recognizing this very narrow exception. To do otherwise would carve out a logical inconsistency wherein the unborn child could not make a claim against its mother for the injuries it sustained. But a joint tort user, or a tort user could, could recover a contribution. Or a scenario such as Your Honor alluded to where the child, if the child lives after the injury, couldn't bring a cause of action, but a cause of action could be brought on behalf of its estate. Neither of those is logically consistent. It should be noted that the Stallman case was decided in 1988. That was eight years after the wrongful death statute was amended to include the claim for unborn children regardless of the stage of gestation. So the Stallman court would have been well aware of the provisions of the wrongful death act. And had the Stallman case, of course, involved a wrongful death situation, they could have addressed that. It was also decided after the joint tort user contribution act was enacted. So those, both of those acts were in place when the Supreme Court was looking at this issue. The, a similar issue was addressed in the Dunsing versus Tripp case. I believe we cited that in our break as well. That's a federal court case, but at the Southern District of Illinois. And in that case, there was a child who was injured by a driver, and the driver attempted to get contribution from the parent for negligent supervision. And the court there held that there's no contribution against the parent for negligent supervision because there's no cause of action by the child against the parent for the same. It's the same reasoning here. It is a narrow and unique set of circumstances, or one that we're not going to see very often. But because there is no cause of action recognized, because there can be, there could be no cause of action brought by Morgan Balvin or the estate of Morgan Balvin against his mother, there cannot be an act for, or a claim for contribution held against the estate. To do otherwise would be asking this court to basically overturn the ruling of Stallman and open up the door to any number of claims against mothers for any manner of negligence that occurred during their pregnancy. And that's exactly the situation that the Supreme Court was rather delicately attempting to avoid in making its ruling in Stallman. I think it's clear that that ruling does apply here as well. And therefore, there cannot be, Heather Balvin's estate could not be subject to liability in tort for the injuries to Morgan Balvin. And therefore, she's not subject to a claim for contribution under the Contribution Act. At this time, unless the court has any questions, I'm going to turn it over to Mr. Wilson. Thank you. Thank you. May it please the court. Counselor. Counselor. Your Honor, my name is Roger Wilson. I'm here. I represent Tarracon, who was Heather Balvin's employer at the time of the accident, which is the subject of this suit. I'm going to principally deal with my client's liability issues as it pertains to this appeal. I think, first of all, on behalf of my client, I adopt what the estate of Heather Balvin's arguments have been made with respect to the Stallman issue. I would add this. It seems to me that for the court to adopt the plaintiff's argument in trying to establish a contribution action against Heather's estate and the employer, the plaintiff's calling upon this court to do two things. First, ignore the Supreme Court precedent in Stallman, which unequivocally held that there is no cause of action on the part of an unborn fetus for injuries sustained in utero. Unequivocal, it made no allowances for exceptions. It made it very clear it was not addressing any issues regarding parent-child immunity. It said, on public policy of the state of Illinois, there is no such cause of action. And that gets to the second thing I think the plaintiffs aren't going to have to ask this court to do to render a decision in their favor, and that's ignore the Supreme Court decision in Doyle v. Rhodes, which is a seminal case in the state of Illinois on the issue of whether an employer can be held liable in contribution for any injuries sustained by its employee. Their court went through a considerate analysis of the public policy and the law involving what is actually meant under the Contribution Act for the phrase subject to liability in tort, and it made it very clear. With regard to the employer, there is an incoherent subject to liability in tort on the part of the employer vis-a-vis its employee. That putative liability was abrogated by the Workers' Comp Act, which rendered the employer immune from direct suit against the employee. In that case, of course, the Supreme Court held that because the employer was only granted immunity by virtue of the statute, still at the very initial analysis, the employer could be held subject to liability in tort to its employer. Therefore, the Contribution Act would apply. That's not this case. Stallman very unequivocally said there is no liability on the part of the mother for injuries sustained by the pedicure period. The Stallman court, the plaintiffs in this case, emphasized, and I think to too much extent argued, the allegations of negligence that they make against the estate of Heather and her navigations across it. Stallman court would caution us to say it's not enough to simply argue or look at what the allegations of negligence are. One has to go further and look at an analysis of whether or not there is indeed a duty, and in this case, the court found there was not. For those reasons, I think that it's very clear that before us today, we have a clear Supreme Court precedent that establishes that there's no liability on the part of the estate of Heather for these injuries or the death of the pedis. As it pertains to Terica, two basic things. The first, of course, is a vicarious liability, and I would argue that actually both the points I'm going to make here today deal with that very issue. First one, very simple. The employer, as everyone knows, is subject to liability for any negligent acts or omissions on the part of its employee that the employee would be held liable to. That deals with basic paragraphs A through F of the plaintiff's complaint against both Terica and the estate of Heather. She failed to navigate the crossing line, not seeing the train, not hearing the warning, various things like that. Under Stallman, we know that the Supreme Court has held there's no cause of action against the mother. If, indeed, there's no cause of action in this case against the estate of Heather Dowland, the employee, it goes without saying that there could be no cause of action against Terica, a vicarious liability for the acts or omissions of the employee. The Kirk decision that I cite in my brief goes to that issue. If there's no liability on the part of the employee, there is no liability on the part of the employer. The next and probably the more critical issue in this case as it pertains to Terica deals with the supposed independent act of negligence for failing to train. That's 5G. Plaintiffs would argue that this is an independent act on the part of the employer. The Gantt case, which I cite in my brief, addresses that issue, addresses it quite specifically. In that case, it was another car accident involving an employee where the employer was sued for the acts of negligence on the part of the employee. In addition, the employer, Gantt, was charged with negligence in custody, claiming that it was a separate act of negligence on the part of the employee. The Gantt case, I think, instructs us that that sort of allegation is not so independent. Rather, it is entirely dependent upon the acts of the employee. And in this case, I think that the same holds true. If the plaintiffs would be able to prove that somehow the employer has a duty to train and that somehow improperly the employee was trained, then it logically goes to show that the employee would have had to do something negligent at that railroad crossing to cause the injury for which the damages are now in place. That is allegations A through F. Very clearly, in order to establish any liability for failure to train on the part of the employer, in this case, it necessarily follows that there has to be some liability on the part of the employee for those negligent actions. And as we know, under Stallman, that's simply not the case. The Gantt case essentially holds that the employer cannot be held to any greater liability than that of its employee. And in this particular case, its employee has no liability. Therefore, I think it necessarily follows that there can be no liability on the part of the employer. This is not a case, an independent act on the part of the employer. Something, if the brakes had failed, if the truck was somehow negligently maintained, or something that very clearly is a duty on the part of the employer and outside presumably control of the employee or the employee's action has absolutely no effect or bearing on whether the truck is maintained properly, whether the brakes worked, or that sort of thing. That's an independent act on the part of the employer. But in this particular case, of necessity, what they are basically saying is the employee in this case was negligent in crossing that crossing the way she did. They claim that the employer should have trained her to do so. But at the end of the analysis, we conclude, based upon Stallman, because the employee does not have a duty and is not very reliable to the fetus in this case. So too, the employer's liability for the acts of its employee are also non-existent. Your Honor, that's all I have, unless the court has some questions. I don't believe we do. Thank you, Your Honor. Thank you, Your Honor. Counsel? In response, I heard several times that what we're asking this court to do is to overturn Stallman, and that a decision in the favor of appellants in this case would require an overturning of Stallman. And I would submit to the court that it's just absolutely not true. Stallman simply does not deal with a wrongful death case. It does not address the interpretation of the Wrongful Death Act. And in fact, in Collada, which subsequently interprets Stallman, the court in that case specifically says that they're not going to address the case of wrongful death cases because they require special circumstances. And those circumstances are really what the Illinois legislature intend. And for that, like I stated earlier, we need to look to the language of the Illinois Wrongful Death Act itself. The legislature exempted out certain categories of people in the statute that were not subject to the Wrongful Death Act. And a mother simply is not one of those people. Had the Illinois legislature wanted to exempt mothers, they easily could have done that. But they didn't. I also heard counsel say that drivers' duties to others should be the same. And I would submit there's no real logical reason in this, or a public policy reason in this circumstance, to exempt out an unborn child from that category of people to whom a duty to operate a motor vehicle in a safe manner should be exempt. And finally, I wanted to address with Tarakon's argument in terms of our pleadings against Tarakon for their independent acts of negligence. All of those arguments should have and had to have been addressed by the trial court. The law is very, very clear on this, that if they're not brought up in the trial court, they're waived, and that they cannot be brought up for the first time before this court. And with that, if the court has any other questions, I'm happy to field them. I don't think we do. Thank you. Thank you. We appreciate the briefs and arguments from counsel. We'll take the case under advisement. The court will be in a short recess.